**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SEGUNDO MOROCHO MOROCHO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-1247-R** |
| | ) | |
| **STEVE KELLEY et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Petitioner Segundo Morocho Morocho, a noncitizen,[1] seeks a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1). United States District Judge David L. Russell referred the case to the undersigned magistrate judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Respondents filed a response and Petitioner replied. (ECF No. 13 & 14).

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition, in part, and order Respondents to bring Petitioner before an immigration judge (IJ) for a bond hearing under 8 U.S.C. § 1226(a) within seven business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

---

[1] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. 1101(a)(3)).

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a citizen of Ecuador[2] who is married to a United States citizen, and has one child who is a United States citizen, and has another child on the way. (ECF No. 1:4-5). Petitioner entered the United States in 2006, at age sixteen, and has lived in Chicago, Illinois for the past ten years. (ECF No. 1:2, 6). On October 14, 2025, officers with Immigration and Customs Enforcement (ICE) arrested Petitioner, and are detaining him without bond at the Kay County Detention Center in Newkirk, Oklahoma. (ECF No. 1:4).

ICE issued a notice to appear (NTA) to Petitioner, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A). (ECF No. 1:6); *see* § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

## II.    PETITIONER'S CLAIMS

Petitioner raises two grounds for relief:

Ground One: Respondents' "[t]he unlawful application of § 1225(b)(2) to Petitioner violates the [Immigration and Nationality Act] INA."

Ground Two: Respondents' detention of Petitioner without a bond redetermination hearing is unconstitutional and in violation of his due process rights.

(ECF No. 1:20-23).

---

[2] Petitioner's counsel stated that her client was a native of Mexico, *see* ECF No. 1:5, but Respondent has submitted evidence otherwise. *See* ECF No. 13-1:2. The undersigned has confirmed Petitioner's citizenship as belonging to Ecuador, not Mexico. *See* https://acis.eoir.justice.gov/en/casInformation (last visited Dec. 16, 2025).

Petitioner asks the Court to issue a writ of habeas corpus "order[ing] Respondents to immediately release Petitioner from custody," or, in the alternative, "[o]rder Respondents to provide Petitioner with a bond hearing within seven days . . ." Petitioner also seeks an award of attorney's fees and costs (ECF No. 1:24).

## III.    STANDARD OF REVIEW

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis,* 533 U.S. 678, 687 (2001)).

"When called on to resolve a dispute over a statute's meaning," the Court should "seek[] to afford the [statute's] terms their ordinary meaning at the time Congress adopted them" and to "exhaust all the textual and structural clues bearing on the meaning." *Niz-Chavez v. Garland*, 593 U.S. 155, 162 (2021) (internal quotation marks omitted). This Court's "'sole function' is to apply the law as [the Court] finds it, . . . not defer to some conflicting reading the government might advance." *Id*. (internal citation omitted); *see also Oklahoma v. U.S. Dep't of Health & Hum. Servs.*, 107 F.4th 1209, 1222 n.11 (10th Cir. 2024) (stating that the court "must independently interpret the statutory

phrase irrespective of the parties' positions"), *judgment vacated on other grounds*, 145 S. Ct. 2837 (2025).

## IV.    ANALYSIS

The Court should: (1) find jurisdiction over the Petition; (2) grant the Petition, in part, and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within seven days of the Court's adoption of this Report and Recommendation or in the alternative, immediately release Petitioner; and (3) decline to address Petitioner's remaining claim.

### A.    The Court has Jurisdiction to Consider the Petition.

Respondents contend that 8 U.S.C. §§ 1252(a)(5), (b)(9), and 1252(g) bar the Court from hearing Petitioner's claims related to his detention. (ECF No. 13:17-20). The undersigned disagrees.

Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) provides another bar to judicial review, specifically for "questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States" "[e]xcept as otherwise provided in this section." *Id.* § 1252(b)(9). Section 1252(b)(9) is a "jurisdiction-stripping 'zipper clause,'" which "channel[s] review of all 'decisions and actions leading up to or consequent upon final orders of deportation' in the courts of appeal, following issuance of an order of removal." *Mukantagara v. DHS*, 67 F.4th 1113, 1115 (10th Cir. 2023)

(quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-85 (1999)).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Court reads § 1252(g) narrowly, *Reno*, 525 U.S. at 482, as it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *Id.* Instead, it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.*

The Court has jurisdiction over the petition as Petitioner is only challenging the way his detention is being conducted — the lack of bond hearing. *See Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (holding that § 1252(a)(5) does "not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention" and affirming district court's finding that it had jurisdiction to review a habeas petition challenging "DHS's continued detention [of petitioner] without bond or without providing a bond hearing").

Likewise, § 1252(b)(9) does not bar this Court's review. Petitioner is not asking the Court to review a removal order (which has not been issued), or Respondents' decision to detain him or seek his removal. And, by addressing the Petition, the Court is not reviewing any part of the process by which Respondents will determine his eligibility for removal. *See Jennings v. Rodriguez,* 583 U.S. 281, 294-95 (2018) (holding §

1252(b)(9) "does not present a jurisdictional bar" when "detained aliens" "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not . . . challenging any part of the process by which their removability will be determined"); *see also Caballero v. Baltazar*, 2025 WL 2977650, at *4 (D. Colo. Oct. 22, 2025) (finding § 1252(b)(9) does not present a jurisdictional bar to a noncitizen challenging "the legality of his continued detention without a bond hearing"); *cf. Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding § 1252(b)(9) did not strip the court of jurisdiction to address the issue of mandatory detention without bond under § 1226(c)).

Finally, § 1252(g) does not present a jurisdictional bar to this Court's review. Respondents argue § 1252(g)'s language strips this Court of jurisdiction to review any claim arising from the decision to commence proceedings against Petitioner—including the "*basis on which* DHS chooses to commence removal proceedings." (ECF No. 13:18). But the Supreme Court finds this interpretation "implausible" because "the mention of three discrete events along the road to deportation was [not] a shorthand way of referring to all claims arising from deportation proceedings." *Reno*, 525 U.S. at 482. And, in *Jennings*, the Supreme Court reaffirmed this narrow reading, explaining that *Reno* "did not interpret [§1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." 583 U.S. at 294. Because Petitioner is only challenging his detention without a bond hearing and not the commencement of the removal proceeding itself, his claim falls outside the narrow jurisdictional limitations of § 1252(g). *See, e.g.*, *Gutierrez v. Baltasar*, 2025 WL 2962908, at *3 (D. Colo. Oct. 17,

2025) (finding "§ 1252(g) does not deprive the Court of jurisdiction to consider the narrow legal questions of whether Mr. Gutierrez's detention under 8 U.S.C. § 1225 violates the INA and whether he is entitled to a bond hearing under § 1226's discretionary detention framework" because these "'purely legal' questions fit the exception to § 1252(g)'s jurisdiction-stripping provision, as they can be decided in the abstract on an undisputed factual record and do not challenge the Attorney General's discretionary authority").

**B.    Section 1226 governs Petitioner's detention.**

Petitioner asserts Respondents have violated the INA by detaining him under the mandatory detention provisions under § 1225(b)(2). (ECF No. 1:12-13). He argues this provision does not apply to "those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents." (ECF No. 1:21). So, as someone who is not a recent arrival seeking inspection and admission into the United States, Petitioner asserts his detention is governed—not by § 1225(b)(2)—but by § 1226(a). (ECF No. 1:10-21). Respondents contend § 1226 does not apply to Petitioner because he was never "admitted" to the country in the first place. (ECF No. 13:20). Furthermore, Respondents argue that § 1225 does apply to Petitioner because that section's mandatory detention provision "does not contain an 'arriving' limitation." (ECF No. 13:20-22) (citing 8 U.S.C. § 1225(b)(2)(A)).

The Court's inquiry "begins with the statutory text" and ends there if it "is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). "If the statutory language is plain, [the Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "[O]ftentimes the 'meaning—or ambiguity—of certain

words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132 (2000)). "So when deciding whether the language is plain, [the Court] must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *Brown & Williamson,* 529 U.S. at 133).

Section 1225(b)(2)(a) provides that:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of [Title 8].

8 U.S.C. § 1225(b)(2)(a). This section "authorizes the Government to detain certain aliens seeking admission into the country." *Jennings,* 583 U.S. at 289; *see also Pizarro Reyes v. Raycraft,* 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("[Section] 1225 governs removal proceedings for 'arriving aliens.'").

Section 1226(a), on the other hand, "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* (emphasis added). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)).[3] "Except as provided

---

[3] The *Jennings* Court acknowledged § 1226 as the default rule for detaining and removing noncitizens "already present" in the country. *Jennings,* 583 U.S. at 303. The Court did not, however, specify whether the "already present" rule applied only to persons who had once entered the country lawfully—as Respondents argue—or to all noncitizens present in the country whether lawfully admitted or not—as Petitioner argues. Because *Jennings* is not definitive, the Court continues its analysis.

in [Section 1226(c)]', the Attorney General 'may release' an alien detained under §
1226(a) 'on . . . bond' or 'conditional parole.'" *Id.* (quoting § 1226(a)(1)-(2)). Courts have
described § 1226(a) as a "catchall" provision which "capture[s] noncitizens who fall
outside of the specified categories" of § 1225. *Pizarro Reyes*, 2025 WL 2609425, at *5.

The resolution of Petitioner's claim turns on whether he is a noncitizen "seeking
admission" as that phrase is used in § 1225, or an arrested and detained noncitizen who—
having never sought to obtain lawful status—falls under § 1226 and may be released on
conditional parole or bond pending the outcome of his removal proceeding.

As Petitioner notes, his "mandatory" detention arises out of a novel interpretation
of §§ 1225 and 1226, which has ensnared other similarly positioned petitioners around
the country. (ECF No. 1:9-16); *see, e.g.*, *Savane v. Francis*, 2025 WL 2774452, at *1
(S.D.N.Y. Sep. 28, 2025) (explaining that "[t]his is another case in a recent line of cases
concerning the scope of the government's authority to detain noncitizens during the
pendency of removal proceedings"); *see also Escarcega v. Olson,* No. CIV-25-1129-J,
Doc. 14, at 18-19 (W.D. Okla. Oct. 28. 2025) (collecting cases), *adopted*, 2025 WL
3243438 (W.D. Okla. Nov. 20, 2025).

Under ICE's new internal guidance:

> An 'applicant for admission' is an alien present in the United States who has
> not been admitted or who arrives in the United States, whether or not at a
> designated port of arrival. Effective immediately, it [sic] the position of DHS
> that such aliens are subject to detention under [§ 1225(b)(2)(A)] and may
> not be released from ICE custody except by [§ 1182] parole. . . . For custody
> purposes, these aliens are now treated in the same manner that 'arriving
> aliens' have historically been treated. The only aliens eligible for a custody
> determination and release on recognizance, bond, or other conditions under
> [§ 1226(a)] during removal proceed[ings] are aliens admitted to the United

States . . . with the exception of those subject to mandatory detention under [§ 1226(c)].

*Savane,* 2025 WL 2774452, at *5-6 (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*).

The Court begins with § 1225's title. "[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (internal quotation marks omitted). And "a title is especially valuable where it reinforces what the text's nouns and verbs independently suggest." *Id.* (internal quotation marks and alteration omitted).

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added). Use of the term "arriving" to describe noncitizens clarifies that the section governs the entrance of noncitizens to the United States. Section 1225 is also located between two other sections dealing with the arrival of noncitizens: § 1224, "Designation of ports of entry for aliens arriving by aircraft," and § 1225a, "Preinspection at foreign airports."

This interpretation is bolstered by § 1225's overall inspection scheme for allowing noncitizens into the country and the section's subheadings all related to "arriving" noncitizens. *See, e.g.*, § 1225(b)(1) (labeled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and describing their immediate removal "without further hearing or review" unless there is a claim for asylum or a fear of persecution); § 1225(b)(2) (labeled "Inspection of other aliens" and describing detention of noncitizens "seeking admission"); § 1225(d) (labeled "Authority

Relating to Inspections" and describing the powers of immigration officers to search and detain vessels and "arriving aliens").

Next, the Court looks to the INA's statutory definitions. *See BP Am. Prod. Co. v. Haaland*, 87 F.4th 1226, 1235 (10th Cir. 2023) (analyzing statute by leaning "on related statutory definitions in the Royalty Management Act."). Section 1225(a)(1) defines an "applicant for admissions" as:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)[.]

8 U.S.C. § 1225(a)(1).

Section 1101(13)(A) provides that "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(13)(A).

Respondent contends that Petitioner is technically an applicant for admission under § 1225(a)(1) because he entered the country without inspection. (ECF No. 13:10-11). While the undersigned may agree with that technical interpretation, that does not mean Petitioner is subject to mandatory detention under § 1225(b)(2)(A). *Escarcega,* 2025 WL 3243438, at *2 ("[I]f all 'applicants for admission' are also 'seeking admission,' then § 1225(b)(2)(A)'s inclusion of the phrase 'seeking admission' would be redundant and courts should avoid statutory interpretations that 'make[] any part [of the statute] superfluous.'" (quoting *Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996)).

Section 1225(b)(2)(A) introduces a different phrase: "an alien seeking admission."

It provides that:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Courts interpreting this narrowing language have thus concluded § 1225 primarily "applies to noncitizens who '[are] presently and actively seeking lawful entry into the United States . . . at the border.'" *Escarcega*, 2025 WL 3243438, at *2 (quoting *Loa Caballero v. Baltazar*, 2025 WL 2977650, at *4 (D. Colo. Oct. 22, 2015)); *see also Jennings*, 583 U.S. at 297 ("[Section] 1225(b) applies primarily to aliens *seeking entry into the United States* ('applicants for admission' in the language of the statute)." (emphasis added)).

As noted, the INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Seeking," however, is undefined. "When a term is undefined in a statute, [the Court] must look to its ordinary meaning." *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1291 (10th Cir. 2024). "'Dictionary definitions are useful touchstones to determine the 'ordinary meaning' of an undefined statutory term.'" *Id.* (quoting *In re Mallo*, 774 F.3d 1313, 1321 (10th Cir. 2014)).

"Seeking" is the present participle of "seek," which Merriam-Webster defines as "to resort to," "go to," "to go in search of," "look for," "to try and discover," "to ask for," "request," "to try to acquire or gain," "aim at," "to make an attempt," or "try." *Seek,*

Merriam-Webster, https://www.merriam-webster.com/dictionary/seeking#dictionary-entry-1 (last visited Nov. 21, 2025). So the use of "seeking" "denotes an active and present effort." *Valverde v. Olson*, 2025 WL 3022700, at \*3 (E.D. Wis. Oct. 29, 2025); *see also Caballero,* 2025 WL 2977650, at \*6 ("The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States. The use [of] the present participle in § 1225(b)(2)(A) 'implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'" (quoting *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at \*6 (E.D. Mich. Aug. 29, 2025))). As a result, a noncitizen seeking admission is a person who, at the time of his or her detention, is actively and presently pursuing lawful admission into the United States. *See Hernandez v. Baltazar*, 2025 WL 2996643, at \*5 (D. Colo. Oct. 24, 2025) ("Courts have found that '[n]oncitizens who are just 'present' in the country . . ., who have been here for years upon years and never proceeded to obtain any form of citizenship[,] . . . are not 'seeking' admission" under § 1225(b)(2)(A)." (quoting *Lopez-Campos,* 2025 WL 2496379, at \*6)).

Section 1225's placement in the overall statutory scheme strengthens this conclusion. *See, e.g.*, *King*, 576 U.S. at 486 (holding that courts are meant "to construe statutes, not isolated provisions" (internal quotation marks omitted)). Congress separated the removal of arriving aliens from its more general section for "Apprehension and detention of aliens" in § 1226. This implies Congress's enactment of § 1225 was for a specific, limited purpose, which the Supreme Court underscored in *Jennings*. *See id.* 583 U.S. at 289 (noting that §§ 1225(b)(1) and (b)(2) "authorize[] the Government to detain

certain aliens seeking admission into the country" and that §§ 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings"); *see also Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected entry into the United States and one who has never entered runs throughout immigration law. . . . But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). And § 1225(a)(3), to which Respondents make a fleeting reference, *see* ECF No. 13:30, further supports this distinction:

> All aliens (including alien crewmen) who are applicants for admission **or otherwise seeking admission** or readmission to or transit through the United States shall be inspected by immigration officers.

*Id.* (emphasis added); *see also United States v. Woods,* 571 U.S. 31, 45 (2013) (noting that "or" "can sometimes introduce an appositive . . . [but] its ordinary use is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'").

Congress's recent amendment of § 1226 through the Laken Riley Act also supports the Court's interpretation and renders Respondents' interpretation of § 1225(b)(2)(A) superfluous. This amendment mandates that ICE "shall take into custody" any noncitizen who is both inadmissible under § 1182(a)(6)(A)(i) ("present in the United States without being admitted or paroled") and is "charged with, [] arrested for, [] convicted of, [or] admits having committed" certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E)(i)-(ii). "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention

without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well. . . . That is, because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizarro Reyes*, 2025 WL 2609425, at *5 (quoting *Gomes v. Hyde*, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025)). As this interpretation "would largely nullify a statute Congress enacted this very year," the Court should reject it. *Id*. (internal quotation marks omitted); *see also Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Petitioner is not "seeking admission" as he has been in the United States for over nineteen years. *See supra*. And, as far as the Court is aware, he has never sought a form of citizenship (asylum, permanent residency, refugee status, visa application, etc.). *See, e.g.*, *Pizarro Reyes*, 2025 WL 2609425, at *6 ("The Court . . . finds it difficult to square a noncitizen's continued presence with the term 'seeking admission,' when that noncitizen never attempted to obtain lawful status."). So, when ICE arrested and detained Petitioner, he was not subject to mandatory detention under § 1225(b)(2)(A). Instead, Petitioner is subject to § 1226, and "is entitled to an individualized bond hearing as a detainee under [§] 1226(a)." *See Caballero,* 2025 WL 2977650, at *8 ("The Court joins the numerous courts across the country that have held that [noncitizens not apprehended at the border,

who have been present in the United States for many years without lawful status] are subject to the discretionary detention framework of § 1226(a).").

The undersigned recommends the Court grant Petitioner's habeas Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within seven days of the Court's adoption of this Report and Recommendation or in the alternative, immediately release Petitioner.

### C.     Petitioner's Remaining Claim

Given the undersigned's recommendation as to the disposition of Petitioner's claim for relief under the INA, the undersigned recommends the Court refrain from addressing the merits of Petitioner's Due Process claim, *see supra*, as the Court can grant him the relief he seeks under § 1226(a). *See Pizarro Reyes,* 2025 WL 2609425, at *8 ("The Court will decline to decide the merits of [petitioner's] due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a).").

## V.     RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas application, in part, and order Respondents to provide Petitioner with a bond hearing **under 8 U.S.C. § 1226(a) within seven business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within ten business days of the Court's order.**

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **December 29, 2025**, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[4] Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VI.    STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on December 22, 2025.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

---

[4] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to seven days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); see also Whitmore v. Parker, 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").